Our final case for today is 15-11-75, Shantu v. Loretta Lynch. Mr. Parra, good to have you here. Thank you, it's good to be here. This is a matter involving an asylum applicant who was denied on discretionary grounds by the immigration judge that involves a wife and a child. And therefore, we are invoking 8 C.F.R. section 1208.16e, which requires reconsideration of the denial. In assessing the denial, the court is to look at the underlying reasons for the denial. Wife and child are in Norway? That's correct, your honor. And are we reviewing a discretionary decision or? It does call, the regulation does call for an assessment of the underlying reason for the denial. And this is a discretionary denial in which the judge invokes safe haven. But the regulations dealing with safe haven were amended in 2001 and there is case law saying that you should no longer consider safe haven as a basis for denial. The immigration judge explicitly stated that there was not firm resettlement in Norway. And therefore, as a matter of law, he was wrong in invoking safe haven as a reason for denying the asylum. Moreover, I also find it ironic that the Board of Justice did not look at Mukasey as a basis for upholding the judge's decision because Zu versus Mukasey was a case in which the Fourth Circuit found that the judge had abused his discretion by denying asylum because he did not look at all of the factors. In fact, both positive factors and negative factors. In this case, neither the judge nor the board looked at the positive factors that weigh in favor of the applicant in this case. Zu versus Mukasey talks about family, business, community, and employment ties to the United States. Evidence of hardship if deported, which clearly exists here if he's deported back to Ethiopia because he has been granted withholding of removal. Evidence of community service. This is a gentleman who is a pastor in the Ethiopian Lutheran Evangelical Church and a vicar within the church. He has the community service that you're looking for. General humanitarian factors. I think it is important to remember that this is a case that involves a man that was severely persecuted in Ethiopia on multiple occasions. His father was detained. His brother has disappeared. He himself was subjected to torture. Therefore, that is a positive factor that one should look at in determining whether or not he should be granted asylum. Counsel, just so I understand what exactly is in front of us. The underlying denial of asylum, that's affirmed by the BIA. None of that is in front of us. All we're looking at now is the BIA's decision not to grant this petition for reconsideration. But in doing so, under 12-11- The answer to that is yes. Yes, because the regulation explicitly states that you have to look at the underlying reason for denial. And we believe, and certainly I was not counsel at the time when it first went before the board, but we think prior counsel was right. That this is abuse of discretion under the factors set forth in Zhu versus McKasey. So what the BIA says when it denies reconsideration is we've already done, we did that last time. We already did that kind of weighing we're supposed to do under the regulation when we reconsider. It's already done on the original appeal. But you're sort of saying, well, if they did it wrong that time, that kind of cycles back now. Well, prior counsel, neither the court nor prior counsel ever raised this particular regulation. It was never mentioned until we filed the motion to reconsider. I guess what I'm trying to ask, and I'm going to try asking it this way. Is it your view that under this regulation, the BIA is always required to grant reconsideration and take another fresh look, even if, assuming for a minute, they already looked at those factors when they affirmed? Yes, in fact, there is a case that says that you don't even need a measure of reconsideration because it is by regulation that they're supposed to do this. So, yes. And when you look at the regulation, it clearly states in assessing the reconsideration, you have to look at the underlying denial. And secondly, whether or not there are reasonable alternatives to reunify with the family. Okay. Is it just another bite at the apple? The facts haven't changed? The law hasn't changed? Take another look at it. I wouldn't characterize it as that because there is, we've presented new evidence. You happen to have in this case, but I guess the question, I'm trying to figure out how this regulation is supposed to work. And it seems odd that if the IJ denies asylum and then the BIA, in affirming that, looks at how grave was the violation that caused the denial of asylum, how bad was the conduct, I'm weighing this against the cost of family reunification and I'm finding everything is fine, that then they would have to just do the exact same thing again. That's what the regulation says. You're supposed to look back at the underlying reason for denial. And then secondly, whether or not there were reasonable alternatives to reunify with the family. So, on the first. How would reunification with the family here? It's impossible and that's the problem. And he has made extensive efforts to do so. If he had been granted the relief that he sought, he wouldn't have asylum. If he won asylum, he would have the right to petition for his family to join him. Then he would have to do something about the family. Right. He'd be like opening the door. He would petition for the family to join him here in the United States. Right now, he can't ask for the family to come to the United States. He cannot. Withholding a removal precludes you from the ability to petition for your family. But if he granted relief here to him, it wouldn't do anything about the family. It would. It would open the door for him to try to do something about the family. My point is that in assessing this. The family has been living in Norway for what, 10 years? They have. But at this point, they actually have an expired visa and are subject to potential deportation back to Ethiopia. From Norway? From Norway. Is that all on the record here? Yes. Now, Mr. Barr, I grant you that the regulation wasn't before the BIA or the parties in the first instance. I guess it couldn't have been because there hadn't been a denial of asylum yet. But it's clear that in his first appeal, the petitioner told the BIA that the immigration judge had made a mistake by failing to consider the fact that he would be separated from his family as a result of the denial of asylum. Isn't that the equivalent of making, I guess this relates to Judge Harris' earlier point, that you're essentially asking the BIA to chew its gum yet again? Under the circumstances, the new information that we're providing. What's the new information? The new information is that he went to the Norwegian embassy. Actually, uniquely, the Scandinavian countries have all visas go through the Swedish embassy. But he went to the Swedish embassy to get a visa to return to Norway. And they denied it. And the reason they denied it is because he's been granted withholding removal. They will not grant a visa unless the person… They denied him the right to go to Norway. Correct. Norway will not allow him because they will only grant a visa if you have legal status that allows you to return to the country from which the travel is emanating. And he doesn't, as withholding of removal, you don't have the right to return. If you leave the country, you've abandoned your relief. And so because he doesn't have that ability to get the visa, he can't go to Norway. Conversely, his wife has applied on two separate occasions. And both times, the consulate in Norway has denied her petition because he has withholding of removal. And so they know that if she comes here that she would, in turn, apply for asylum. So the U.S. consulate has denied her visa to come to the U.S. She just applied to Norway with U.S. consulate. Correct. To come here, and the U.S. has denied it. Correct. So the impact here is extreme. Counsel, would you say, I mean, do you, is it your position that this court in Zoom basically held this kind of a decision is disfavored? You're really not supposed to be denying asylum on discretionary grounds. Absolutely. Right, and that if you do, under this regulation, someone needs to say, not just was the denial of asylum justified, but was it justified in light of the granting of the withholding of deportation, which puts a person in a severe legal limbo where they can't bring their family over, that that's what's missing in this case? Yeah. In Zoom versus McKasey, they say there must be an egregious negative activity. And they list some of the negative factors. Significant violation of immigration laws, that doesn't exist here. Criminal record and severity of record, that doesn't exist. Other evidence of bad character or undesirability. By all accounts, he's a person of good moral character. So there are no egregious negative factors in this case. So we would maintain that the judge was legally in error. One, he should have denied on the basis of safe haven, because that concept no longer exists. You have to look at firm resettlement. And he clearly found that he wasn't firmly resettled. The other thing that we would object to is both the immigration judge and the board commented that the respondent had lied to the consulate officer. And that's simply not true. They found he lied, right? There's a finding that he lied. Right. We're bound by that, aren't we? I mean, that's a fact. He lied when he first came in here. No. No, he did not. When he went to the consulate, he had an invitation to come to a church conference. He showed the invitation, and they granted him the visa. He was never asked if he had other intentions. There may be omission, but there's certainly not an outright lie to a consulate officer in this case. I think it's a mischaracterization to say that's a lie. Can I just ask you a question? And I feel like this might be a little unfair, because I believe everyone is assuming that the regulation applies in this case, and so there's no real reason to consider whether it does. But it does strike me that when you just read the regulation, that what it seems to have in mind is not this kind of case, where there's a discretionary denial of asylum and a simultaneous granting of withholding, that this is really designed to get at a different kind of case, where first somebody denies asylum and then later withholding is granted. And so the idea is that at that point the BIA is supposed to go back and make sure that in light of this subsequent granting of withholding, you want to stick with the discretionary denial of asylum. No, the withholding removal is made at the same time. It always is? It has to be made at the same time? Yes. You rule on all the forms of relief. And so an immigration judge is going to, and if you look at his decision in that case. So what is the, because the regulation says in the event that the applicant is denied asylum, and the applicant is subsequently granted withholding of deportation, you think they just mean like on the next page of the order? Right. Because it's always made at the same time at an immigration court. That's good to know. Now in hindsight, I think there was error in the fact that this provision wasn't raised, both to the immigration judge and to the board right from the beginning. But at the same time, I do believe that there was error in using discretion to deny asylum, because form shopping simply cannot be considered an egregious negative factor. It's not. And safe haven should also not have been a basis, because the amendments changed in 2001, and there's case law saying clearly that you can only consider this issue under the firm resettlement analysis. And again, the immigration judge found that he was not firmly resettled. He had a two-year student visa in Norway. But most importantly at this point, it's the impact on his family. He cannot reunite with his family. He cannot get a visa to go to Norway, and she cannot get a visa to come here. The only alternative would be that they have to go back to Ethiopia, which everyone agrees he has a well-founded fear of persecution in Ethiopia. So that's not an alternative. As a result, we have a gentleman who has never seen his son. I think Ms. Browning can help us. Thank you, Your Honor. Ms. Browning? What can we do? May it please the Court? My name is Rachel Browning, and I represent the U.S. Attorney General. The Board has broad discretion in determining whether a closed case warrants reconsideration, and the only question before the Court is whether the Board's denial of the motion to reconsider was arbitrary, irrational, or contrary to law. Because the Board properly determined that the agency addressed fully the factors relevant to the discretionary including the issue of family reunification, its decision denying the motion to reconsider was not an abuse of discretion. Even though the regulation says the denial of asylum shall be reconsidered, do you think it's discretionary? I mean, I don't really understand how this is considered, but you tell me. Okay, let me see if I can clarify the interplay between this regulation and the motion to reconsider regulation. What the Board is saying is that the way 1208.16e operates, when a person applies for asylum, there's asylum withholding, removal, and protection under convention against torture. There could be any number of reasons why someone might not be statutorily eligible for asylum or they might not warrant it in the exercise of discretion. That decision is reconsidered once withholding is granted, and that's when all these other factors come into play. But the ultimate decision of whether asylum should be granted is discretionary. So the regulation operates as sort of a checkpoint so that we see the adjudicator, when they've granted withholding or removal, goes back if there's an issue of family reunification because there are certain limitations to withholding or removal.  Yes, it does, Your Honor. So this regulation says, so first, like on page one, you deny asylum, and then on page two, you grant withholding, and then on page three, you say, let me go back and make sure I got that right? That just seems like such an odd regulation. But it's within the withholding of removal portion of the regulation. So it's assuming that withholding has been granted, and when withholding has been granted and asylum has been denied solely in the exercise of discretion, that decision is going to be reconsidered. And yes, I mean, I recognize that it's kind of an odd wording, an odd placement, but what it does not mean is that any time someone's personal circumstances changes such that the granting or withholding of removal creates barriers or burdens, that does not mean that the board goes back and reconsiders the decision again and again. And that's essentially what Petitioner has asked for. Does discretionary denial— It should be done to get the family together. Under the circumstances, I'm not sure. I mean, I think Petitioner is putting the board in an untenable position of having to know what all of the different immigration laws and procedures are of any potential third country. The issue is whether the agency addressed all of these factors at the time the decision was made, and those discretionary factors are not before the court, because if Petitioner had a problem with the discretionary denial and the reasons given by the agency, he needed to file a PFR of that decision, and he did not. He waited, I think, over a year, filed a motion to reopen Suspente, where he introduced all of these new personal circumstances. The board denied that. Then two years later, filed a motion to reconsider based on this regulation. But what the board said was that this regulation was complied with at the time, so there was no legal error at the time that the judge and the board made their decisions, because, in fact, he could have reunited with his family in Norway at that time. There was no—he put forward, and he's never put forward, any objective evidence other than his own contentions and speculations. You mean with respect to the visa? Yes. And why—and, you know, what the board said is that, you know, anybody's passport is going to expire or a visa is going to expire. That doesn't give—that doesn't mean that the board has to look at these applications again and again. I mean, this is just—unfortunately, I recognize that there are difficulties. We're not unsympathetic. But it's not an abuse of discretion in this posture for the board to say, all of those factors were dealt with before the judge. The board addressed them again in its appeal. It addressed them again in the denial of sua sponte. So there is no legal error here that would give the board reason to reconsider the prior denial. I mean, as I read Zhu, it really does seem like we're saying in Zhu, this is really a disfavored outcome. When there's a discretionary denial of asylum, but a granting of withholding puts these people in a very bad legal limbo. They can't reunify their families. It's really a disfavored outcome. And what I'm not really seeing in the BIA's original offense is, you know, any sense that, boy, something very bad must have happened here in order to justify this outcome. This guy must have done something really, really egregious. That's not kind of the tone of the original BIA affirmance at all. They're just looking at it like, oh, you know, there are good reasons why you might deny asylum and, okay, reunite it here. But without this sense that you're really supposed to be a very unusual disfavored outcome. I understand, Your Honor, but I think what the board was saying is this petitioner's particular circumstances were unusual. I mean, he had been living in Norway for over two years. He made the decision to go there. He had two different chances to apply for asylum in Norway. Yeah, but I thought that this whole safe haven thing, I mean, you're comfortable with continuing to rely on failure to take advantage of a potential safe haven even after the regulations have been changed? The regulations no longer state that that's a mandatory reason for the denial. There is still case law, right? I don't think our circuit has addressed it, but other circuits have held that at this point you just can't look at that as a grounds for discretionary denial. The only court that I found that relies on that is the Second Circuit. That's a good one. And the court's not bound by that. I understand, but it's somewhat troubling that the one thing the BIA relied on, at least one other circuit, is that you can't even look at that. Well, I think in this case the judge wasn't just looking at safe haven. He was looking at this idea of forum shopping, of going to one country and being there for a while. Isn't that kind of the same thing? I don't understand how those are two different things. I thought that all amounted to, why doesn't he just want to go to Norway? It was that and then kind of a misrepresentation of using his student status to get the visa to come to the United States and that when he knew all along, and he does say in his brief that he, or in his original statement, that he knew his intent all along was to apply for asylum. That is not the kind of egregious misconduct we're talking about in ZOO, is it? ZOO listed the factors and it said it was non-exhaustive. I think that matter of pool is still, the board's decision is still informative, and the judge and the board were right to rely on it. And I'll reiterate that our position is that those discretionary factors are not before the court. That should have been, those have been waived. The only issue that this court can address is whether the board's decision, noting that these factors were in fact dealt with before, including the opportunity he had to reunite with his family in Norway, whether all of that was addressed in the initial decision. So this might be a different case if he had raised, properly preserved the issue the first time around? It might very well be, but he did not preserve that issue, Your Honor, and so we can't, it would create a situation in which the board has to re- Had an ineffective counsel along the way? Pardon? Had an ineffective counsel, the predecessor lawyer messed it all up? Is that what we got? I'm not in a position to say that, I don't know. Pardon? I mean, he did actually, in his appeal to the board, he raised- We've got a wife in Norway and a seven-year-old boy in Norway, and the father here, the husband here, and they can't get together in Norway, they can't get together here, they can only get together in Ethiopia, is what Mr. Parris said. And then we got a finding by the IJ that if he goes to Ethiopia, his life and freedom will be placed in danger. So that's where we got the withholding of removal. They can't go to Ethiopia. So there's no way for the family ever to get together, you say. I'm not prepared to say that. As Judge Harris said, that's not very much of a favored result. Unfortunately, that's a position that many people are in when they're granted withholding of removal or protection of the Convention Against Torture. The important thing is that they're not going to be sent back to a country where they would be persecuted or tortured. There is an order of removal still in effect. It's just being withheld in order to protect the petitioner. Won't they be persecuted or tortured in either Norway or the United States? No. None of the three. Can I ask a question about PULA? Am I right that PULA and ZOO seem to be in a little bit of tension? Because at least as I read ZOO, they really are saying, we have held that when withholding is granted, you need an especially good reason to deny asylum on discretionary grounds. And I read PULA saying actually the exact opposite, that once you've granted withholding, it's easier to justify a denial of asylum. Because as you just said, at least the person isn't being sent back to a country where they're going to be tortured. I'm not sure that this circuit at least will continue to rely on that part of PULA. I recognize what you're saying. There's some tension there. But both cases at bottom say that there's a balancing of factors that has to take place. And what the board said in its initial affirmance of the judge's decision is that under both of those decisions, those factors were balanced. And what PULA says is the totality of the circumstances and actions of the alien in his flight from the country where he fears persecution should be examined. And whether he passed through countries where orderly refugee procedures were available to him. And that was a big factor in the judge's decision was that, you know, it's not the United States' burden alone to bear protecting people from  He was, in fact, in a country that could have done that for him. It's a little bit like a due diligence argument, I suppose. But I recognize- That's the argument that the Second Circuit rejected. Well, the Second Circuit, as I recall, rejected it because they interpreted it as it being just a flat bar to asylum. Or rejected the notion that safe haven just automatically cuts it off. What the board has said is that it's a factor that can be balanced. No, I thought the Second Circuit said that at this point, sort of time you've spent in a potential safe haven in this third country is irrelevant unless you are firmly resettled. That's at least how I heard the Second Circuit opinion. That could be correct, Your Honor. I'll take your word for that. But that's not a position we would like to perpetuate. Right. Understood. Because we believe this is something that's best to be balanced by the adjudicator taking into consideration all of these factors. So if I could just- I want to go back to a moment just to make our position clear on the interplay between these two regulations. If the board had decided to reconsider this case- If they had? If the board had in this case, he could only have done that under its authority under Regulation 1003.2. This Regulation 1208, we believe, only pertains to the time the application is being considered. The board could have said, you know, there was an error because this regulation wasn't complied with at the time and so the case could be reconsidered. But it doesn't give the board the authority to reconsider any case that comes before it. We're not making a jurisdictional argument, but we did note in a footnote if the board had wanted to dismiss because this wasn't filed within 30 days of the original decision, it could have done so. Because the only authority to reconsider a previous, a closed case as this is, comes under the other separate regulations. This regulation is a withholding of removal regulation, and it has to do with the time the actual application is being adjudicated. That's our position. So the changed circumstances, to the extent there were, really implicate 1003 and not 1208. Correct. And a change of personal circumstances never warrants reopening a case. It would have to be a change in country conditions where you could reopen despite the time and numerical limitations to motions to reopen or reconsider. Is that consistent with the position you took in the Second Circuit in the case where you said the person had failed to exhaust? Okay, I'll address that. I understand what you're saying. First of all, that was a U.S. attorney. The U.S. Attorney's Office used to handle cases in the Second Circuit. The Office of Immigration Litigation, that's not our position. Yeah, they were making an exhaustion argument, and it seems to suggest that in order to, you know, and that's not our position. Because we believe the way this regulation, where it's positioned in the Code of Regulations, strongly suggests that it's meant to be an automatic reconsideration at the time the application is filed and being considered. That's why I say before, it's not a separate authority for the Board to reopen or reconsider a closed case. It would just be a grounds to reconsider or reopen if that had been legal error. Are there any circuits holding that? I mean, I know there's not much law on this. There is not much law, Your Honor. I know, and I, you know, we researched this exhaustively. It's just not something that comes up, as you point out, does not come up a lot. So if there's no further questions, we believe the Board acted well within its considerable discretion in determining that all the factors that needed to be complied with at the time were met, and so we would ask that you deny the petition for review. Thank you. Thank you, Ms. Browning. Mr. Parra? The first point I'd like to make is let us look at what is the reason for this particular regulation. Obviously, they put this regulation in because it is disfavored that a family has to be separated. It's highly disfavored, and that's the whole reason this regulation was inserted into the code, into the regulations. Secondly, I think it's incorrect to say that we can't go back to look at the underlying factors assessed by the judge. In fact, if you look at the regulation, the last sentence, it explicitly states that you need to assess the underlying reason, and secondly, you must look at whether there are reasonable alternatives to reunify with the family. So we can go back and look as to whether they assess the factors, and I would strongly disagree that they look at the totality of the circumstances. When you look at the decision of the IJ and the board, all they look at are the negative factors. They only look at the form shopping and the argument of safe haven. They don't look at all the other positive factors that should be considered. What are they? And I read that from Mukasey. The fact that evidence of community service. He's an important member of his community and a vicar within his church. The general humanitarian factors. I think you have to look at the severity of the torture to which he was subjected in Ethiopia. The fact that other relief was granted, such as withholding. This is a case where the judge granted withholding. Evidence of hardship if deported. That's obvious because the judge correctly found that his life would be at risk if he's deported to Ethiopia. The regulation specifically states that you have to go back and look at those underlying reasons. It explicitly states that. You can't say that the court doesn't have the authority to go back and look at it. The regulation explicitly states it. With respect to the fact that a passport expires. That's wrong. That's true. But that entirely misses the point. Even if he had a passport, he would not be able to get a visa to Norway. And counsel is wrong to say that we provided no evidence. We did provide evidence. We provided a letter from the Swedish consulate stating explicitly that they would not grant him a visa because he has withholding of removal in this country. So we did provide that evidence. And we did provide the evidence that the wife was denied by the US Embassy for the same reason. That her husband has withholding of removal in this country. So they're not going to give her a visa to come here. So the impact is extreme. And that's the reason why this regulation was inserted. To avoid this situation where a family is separated. And quite frankly, that was ultimately the reason the judge did this. He was punishing the applicant because he felt he should have applied for asylum in Norway. But the impact is that he separated it from his family. And again, going back to Zhu versus Mukasey, you can only deny asylum as a matter of discretion for egregious factors. There are not egregious factors in this case. There simply are not. So we would urge the court to apply the analysis in 8 CFR 208.16e or section 1208.16e. And overturn the decision of the board and the immigration judge. So that the family can finally be reunified. Thank you. Thank you, Mr. Chair. We'll come down and greet the council and adjourn the court. Sinead, aye. This honorable court stands adjourned. Sinead, aye. God save the United States and this honorable court.
judges: Robert B. King, Albert Diaz, Pamela A. Harris